Eastern District of Kentucky
FILED
FEB 0 4 2026
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CRIMINAL ACTION NO. 5:25-CR-00117-KKC-MAS**

UNITED STATES OF AMERICA                                                                 PLAINTIFF

V.                                            **PLEA AGREEMENT**

**STUART GREGORY WELLS**                                                                DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 2 and 20 of the Indictment, charging violations of 26 U.S.C. § 7202, Willful Failure to Collect or Pay Over a Tax. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession at the time of the execution of this Agreement and arising out of the Defendant's conduct within the Eastern District of Kentucky, unless the Defendant breaches this Agreement, and will move at sentencing to dismiss Counts 1, and 3 through 19, of the Indictment.

2. The essential elements of Counts 2 and 20, violations of 26 U.S.C. § 7202, are:

    (a) The defendant was a person who had a duty to truthfully account for, and pay over, federal income and social security taxes that the defendant was required to withhold from wages of employees;

    (b) The defendant failed to truthfully account for and pay over federal income and social security taxes that the defendant was required to withhold from the wages of employees; and

1

(c) The defendant acted willfully.

3. As to Counts 2 and 20, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) From at least 2018 through July 2024, STUART GREGORY WELLS was the sole owner of Allcall Business Development Center (ABDC) in Danville, Kentucky, in the Eastern District of Kentucky.

(b) ABDC was required to withhold taxes from its employees' paychecks, including federal income taxes, as well as Medicare and Social Security taxes (often referred to as Federal Insurance Contribution Act, or "FICA", taxes). Additionally, the business was required to remit matching employer contributions to the Internal Revenue Service equal to the withheld Social Security and Medicare taxes.

(c) ABDC was required to make deposits of their payroll taxes to the Internal Revenue Service on a periodic basis, and was required to file, following the end of each calendar quarter, an Employer's Quarterly Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of Social Security and Medicare taxes due, and the total tax deposits being made.

(d) As the sole owner of ABDC, WELLS had direct financial authority over the business and was the sole signer on the bank accounts. Wells approved payments, deciding when and which bills to pay, and ensured that all employees were paid. In his position as owner, Wells was a "responsible person", that is, he had the corporate responsibility to collect, truthfully account for, and pay over payroll taxes for the business.

(e) For tax periods 2018 through June 2024, the Defendant failed to file, or cause to be filed, on behalf of ABDC, quarterly employment tax returns (Forms 941) with the Internal Revenue Service.

(f) For the tax periods 2018 through June 2024, WELLS caused ABDC to withhold federal income taxes and FICA taxes from employees' paychecks, and willfully caused the business to fail to account for, and pay over, to the Internal Revenue Service approximately $449,460.42 in federal income taxes and FICA taxes, and $313,853.26 in employer's share of such payroll taxes.

2

(g) Regarding Count 2, for the period of October 1, 2019 through December 31, 2019, the Defendant caused ABDC to withhold federal income and FICA taxes from its employees' paychecks, and willfully caused the business to fail to account for, and pay over, to the Internal Revenue Service approximately $21,765.55 in federal income taxes and FICA taxes, and $11,150.05 in employer's share of such payroll taxes.

(h) Regarding Count 20, for the period of April 1, 2024 through June 30, 2024, the Defendant caused ABDC LLC to withhold federal income and FICA taxes from its employees' paychecks, and willfully caused the business to fail to account for, and pay over, to the Internal Revenue Service approximately $18,467.25 in federal income taxes and FICA taxes, and $18,467.25 in employer's share of such payroll taxes.

(i) WELLS was informed of his tax obligations by the Internal Revenue Service on numerous occasions, including an interview with IRS agents in November of 2021, but he continued to fail pay over the taxes due and owing, instead using some of the funds for personal use.

4. The statutory punishment for Counts 2 and 20 is imprisonment for not more than 5 years, a fine of not more than $250,000 twice the gain or loss, whichever is greater, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies for each count, and the Defendant will pay this assessment to the U.S. District Court Clerk at sentencing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2025, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all taxes due and owing referenced in the Indictment for all quarters in tax years 2018 through June of 2024.

(c) Pursuant to U.S.S.G. §§ 2T1.1(a) and 2T4.1(H), the offense level is 20 because the tax loss is more than $550,000.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(e) Pursuant to U.S.S.G. § 5E1.1, restitution is $763,313.68, and the victim is the IRS – RACS, attn: Mail Stop 6261, Restitution, 333 West Pershing Avenue, Kansas City, Missouri 64108.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The United States will recommend releasing the Defendant on conditions set by the Court for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

9. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to

4

implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

10. The Defendant agrees to pay restitution in an amount not less than $763,313.68 to the Internal Revenue Service (IRS). This restitution consists of the following tax amounts for the following calendar tax years: $28,113.20 for 2018, $144,330.62 for 2019, $107,154.11 for 2020, $141,492.43 for 2021, $126,192.88 for 2022, $141,630.55 for 2023, and $74,399.88 for the first two quarters of 2024. The Defendant agrees that these restitution amounts result from his fraudulent conduct and that he is liable for fraud penalties on these amounts. He understands that the IRS will use the restitution order as the basis for a civil assessment and that he does not have the right to challenge the amount of this assessment. Neither the existence of a restitution payment schedule nor the Defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint. The Defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of taxes, penalties, and interest based upon the restitution amounts, and he agrees not to challenge or dispute the assessment or the amounts of taxes, penalties, or interest. He agrees to provide to the IRS, upon request, information regarding the above tax years, and he agrees not to file any claims for refunds of taxes, penalties, or interest for those years. Nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties, or interest due from the Defendant for the time periods covered by this agreement or any other time period. The Defendant agrees that this agreement, or any

judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise his obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period. Thus, the defendant understands and agrees he remains liable for any civil fraud penalty imposed by 26 U.S.C. § 6663 on any understatements of tax for the years involved.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant

is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act,

28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT,
UNITED STATES ATTORNEY

Date: 2·4·2026   By: _____
Andrea L. Mattingly Williams
Assistant United States Attorney

Date: 2/4/26   _____
Stuart Gregory Wells
Defendant

Date: 2/4/26   _____
Russ Baldani
Attorney for Defendant

9